

# United States Bankruptcy Court
# for the District of Oregon

**Albert E. Radcliffe, Chief Judge**
Virginia H. Denney, Judicial Assistant
Howard J. Newman, Law Clerk

151 West Seventh Avenue, Suite 300
Post Office Box 1335
Eugene, Oregon 97440

(541) 465-6802
FAX: (541) 465-6899

August 10, 2005

Mr. Patrick Wade
PO Box 1475
Eugene, OR 97401

Mr. Thomas O. Alderman
400 Eugene Professional Building
132 East Broadway
Eugene, OR 97401

RE: BROWN, Janice S.; Case No. 603-65628-aer7
ERIC R. T. ROOST, Trustee v. DEBRA YEAKEL & JANICE S. BROWN
Adversary Proceeding No. 04-6024-aer
Cross Motions for Summary Judgment

Counsel:

    This letter is to announce my findings of fact and conclusions of law on the above-referenced motions, which were argued on March 2, 2005. At hearing, the parties conceded there were no disputed issues of material fact.

    This is a complaint filed by the Chapter 7 trustee for turnover of certain funds held in trust for Debtor's benefit. Originally, the case was filed against the Trustee of the Trust (Debra Yeakel). Debtor then intervened as defendant, and filed an answer. Debra Yeakel then obtained an order depositing the funds at issue with the court.

Facts:

Debtor filed her Chapter 7 petition for relief on July 9, 2003.

    Debtor held a beneficial interest in a trust known as the Jane Delight Huettl Revocable Living Trust dated January 27, 2003 (the "Trust") as of the commencement of her bankruptcy case. A copy of the Trust is attached as Exhibit A to the Stipulation of Facts filed herein on October 27, 2004. I hereby incorporate the Stipulation of Facts, including Exhibit A.

Summary Judgment Standards:

On a motion for summary judgment, the moving party has the burden to establish the absence of a material issue of fact for trial. FRCP 56(c). The substantive law governing a claim or defense determines whether a fact is material. T.W. Elec. Service., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987). Material facts are such facts as may affect the outcome of the case. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L. Ed. 2d 202, __ (1986).

Discussion:

Plaintiff makes claim to the deposited fund under § § 541(a)(1) and 541(a)(5)(A).

Section 541(a)(1) provides:

> The commencement of a case under section 301, 302, or 303 of this title creates an estate. Such estate is comprised of all the following property, wherever located and by whomever held:
>
>> (1) Except as provided in subsections (b) and (c)(2) of this section, all legal or equitable interests of the debtor in property as of the commencement of the case.

As noted, this definition excludes from the estate, property as provided in § 541(c)(2). Section 541(c)(2) provides:

> A restriction on the transfer of a beneficial interest of the debtor in a trust that is enforceable under applicable nonbankruptcy law is enforceable in a case under this title.

Debtor defends under § 541(c)(2), noting the spendthrift language of Trust ¶ 6.2.[1] Plaintiff posits a two-pronged argument in response. First, he argues that under the Trust, the spendthrift clause ceased its effectiveness upon the Trustor's death, which occurred pre-petition. Next he argues that even if the clause remained effective, it is not enforceable under Oregon law, as a matter of public policy because, upon the Trustor's death, Debtor had a vested right to demand payment of her distributive share.

As to the first argument, the question turns on whether the Trustor intended that the spendthrift clause survive until the trust residue was actually distributed, as opposed to terminating at her death.

---

[1] Paragraph 6.2 provides in pertinent part:

> The interest of any beneficiary in income or principal may not be voluntarily or involuntarily anticipated, alienated, or encumbered and shall not be subject to claims of creditors or others or to legal process.

First, as a general matter, spendthrift clauses are enforceable under Oregon law. Shelley v. Shelley, 223 Or. 328, 354 P.2d 282 (1960). In interpreting the Trust, under Oregon law, I must review the entire Trust to try to discern the Trustor's intent. Goodwill Industries v. U.S. Bank,196 Or.App. 556, 561-2, 103 P.3d 1165, 1167 (2004). I must, if possible, give effect to all of its provisions. Id. If I find the trust unambiguous, the inquiry ends Id.

In support of their arguments, the parties reference various sections of the Trust.

Plaintiff references ¶¶ 5.1 and 7.7 which I discuss below. Debtor in turn references several Trust provisions giving the trustee discretion to deal with assets.[2]

Debtor argues the Trustor intended that the trustee have discretion to liquidate assets before making distribution to the residuary beneficiaries, as such, the Trust existed post mortem. Thus the spendthrift clause, which, by its terms, applied to any beneficiary, survived the Trustor's death.

As noted, I am to construe the trust as a whole, and if possible give effect to all its provisions. In that light, I'm persuaded that although the Trust provisions relating to the trustee's discretion to manage assets indeed extended beyond the Trustor's death, the spendthrift clause as, to Debtor, did not.

---

[2] These include the power of the trustee to:

    7.1 Manage, maintain, improve, lease, grant options on, encumber, sell, exchange, or otherwise dispose of part or all of the trust estate in any manner and on any terms my trustee considers beneficial to the trust estate;

    7.2 Retain any property and continue to operate any business for so long as my trustee considers retention of probable benefit to the trust estate and the trust beneficiaries; and,

    7.8 Make any distribution in any of the following ways to a beneficiary who is a minor, incompetent, under legal disability, or considered by my trustee to be unable to handle property if paid to the beneficiary directly, without liability to my trustee:

        7.8(a) Directly to the beneficiary.
        7.8(b) To the beneficiary's guardian or conservator, to a custodian under the Oregon Uniform Transfers to Minors Act, or to any other fiduciary.
        7.8(c) To any person or organization furnishing health care, education, support, or maintenance; and

    9.5 [M]ake any election or decision available to my trust under federal or state tax laws, to make pro rata or non~pro rata distributions without regard to any differences in tax basis of assets distributed, and to make distributions in cash, in specific property, in undivided interests in property, or partly in cash and partly in property. The good faith decisions of my trustee in the exercise of these powers shall be conclusive and binding on all parties, and my trustee need not make any adjustments among beneficiaries because of any election, decision, or distribution.

  Debtor has noted the trustee's power to manage and liquidate assets when she deems it beneficial to the estate, and make distributions in cash, in specific property, in undivided interests in property or partly in cash and partly in property. With the major residuary asset being real estate, and that asset subject to the claims of fifteen (15) named beneficiaries, these provisions are strong indications that the Trustor intended these provisions to extend past her death. Further, the Trust at ¶ 7.6 gives the trustee the power to purchase assets from, and make loans to, the Trustor's probate estate.[3] By definition, this can only occur after the Trustor's death.

  However, these broad powers were meant to protect the assets as a whole, and are not indicative of an intent to protect the individual beneficiaries. In this regard, I am convinced the Trustor intended that the spendthrift clause terminate upon her death as to any non-grandchild beneficiary.[4] This would mean those beneficiaries (including Debtor) could alienate their shares upon the Trustor's death, when the trust became irrevocable. First and most obviously indicative of this intent is Trust ¶ 5.1 which provides: "[a]t my death, my trustee shall distribute the residue of the trust estate as follows..... (emphasis added).[5] The Trustor's intent in this regard is buttressed by Trust ¶ 7.7,[6] which provides that the trustee may hold the estate as an undivided whole, but that such undivided holding "shall not defer vesting or distribution under the trusts."[7] Further, Trust ¶ 3.3(a) declares that the Trust's primary purpose is to provide the Trustor with the "highest possible quality of life," and that "[t]he rights of other trust beneficiaries shall be secondary to my [Trustor's] rights as a trust beneficiary." This evidences an intent that protection of the residuary beneficiaries' interests was not foremost on the Trustor's mind.

---

[3] ¶ 7.6 gives the trustee power to:

> Purchase assets at their fair market value (as determined by my trustee) from my probate estate, and make secured or unsecured loans to my probate estate, for any reason my trustee believes will benefit my probate estate.

[4] And likewise, as to any grandchild, if over the age of 25 at the Trustor's death.

[5] By negative implication, I find the Trustor did not intend that the spendthrift clause continue indefinitely, pending administration of the trust, which itself imposes no deadline for distribution/termination other than the boilerplate "rule against perpetuity" provision (see Trust ¶ 6.3).

[6] Trust ¶ 7.7 provides:

> As to each trust created by this instrument, my trustee shall have all powers conferred on a trustee by Oregon law as now existing or later amended. In addition, my trustee shall have the power to:
>
>> 7.7 Hold the trust estate as an undivided whole without separation into any separate trusts for as long as my trustee considers suitable and allot undivided interests in any asset to any separate trusts, but no undivided holding shall defer vesting or distribution under the trusts.

[7] I find the term "the trusts" in ¶ 7.7 includes the Trust (as a whole), as well as any grandchild trust set up in ¶ 5.1.

Messrs. Wade & Alderman
August 10, 2005
Page-5

      Debtor, however, argues that the Trust's "revocability" renders the spendthrift clause surplussage unless construed to extend past the Trustor's death.[8] However, the spendthrift provision can be given effect by its application to the grandchildren's "separate trusts" in ¶ 5.1.

      Since I find the Trustor did not intend the spendthrift clause to survive her death (except as to the grandchildren under age 25), I need not address Plaintiff's "public policy" argument. Further, because Debtor's distributive share is estate property under § 541(a)(1), I need not address Plaintiff's arguments under §541(a)(5).

      Based on the above, I conclude there is no genuine issue as to any material fact and that Plaintiff is entitled to judgment as a matter of law. Plaintiff's motion for summary judgment shall be granted, and he shall have judgment that the funds currently on deposit with the court clerk be turned over to him within thirty (30) days of the judgment's entry.

      The above represent my findings of fact and conclusions of law under FRBP 7052. They shall not be separately stated. An appropriate order and separate judgment shall be entered.

                            Very truly yours,

                            *albert E. Radcliffe*

                            ALBERT E. RADCLIFFE
                            Bankruptcy Judge

AER:vhd

---

[8] The argument goes as follows: The Trustor could have revoked the entire trust at any time. Under Oregon law, this right of revocation meant that "death" beneficiaries such as debtor, had no interest in the trust assets while the Trustor was alive, Burton v. Ullrich, *(In Re Schmitt)*, 215 B.R. 417 (9th Cir. B.A.P. (Az.) 1997) (dicta), and as such, had no interest for a spendthrift clause to protect while Trustor was alive. Further, during her lifetime, the Trustor was the only beneficiary. However, as a self-settled trust, the Trustor could not hide from her creditors behind the spendthrift language. Mitchell v. West *(In Re West)*, 81 B.R. 22, 25 (9th Cir. B.A.P. (Or.) 1987) (spendthrift trusts may not be self-settled). People are presumed to know the law, and presumably, the Trustor would not have intended the spendthrift clause to be surplussage.